O'CONNELL, P.J.
*499 Petitioner, Adoption Associates, a child-placing agency, appeals by leave granted the trial *500 court's order denying petitions to terminate parental rights to two children surrendered under the Safe Delivery of Newborns Law, MCL 712.1 et seq . The trial court concluded that the Safe Delivery of Newborns Law only applied to the mother of the surrendered children and not to the legal father. We granted Adoption *874 Associates' application for leave to appeal, and "the nonsurrendering parent" appeared and requested that we affirm the decision of the trial court. We conclude that the existence of a legal father does not affect application of the Safe Delivery of Newborns Law and that the Safe Delivery of Newborns Law applies to the husband of a surrendering mother in that the husband may not later assert parental rights. Accordingly, we reverse.
I. BACKGROUND
In August 2016, a woman gave birth to twins. Under the Safe Delivery of Newborns Law, she surrendered the twins to the hospital the day after they were born. The surrendering mother did not provide her address or marital status, she gave no indication that she was married, and she declined to identify the father. Adoption Associates took custody of the children and placed them with prospective adoptive parents. In September 2016, the adoption agency filed petitions to terminate the parental rights of the surrendering parent and the nonsurrendering parent.
Also in September 2016, Adoption Associates requested the children's birth certificates for purposes of the adoption. In October 2016, the Vital Records Office notified the agency that it could not provide the birth certificates because of an "unresolved paternity issue." In December 2016, after the Vital Records Office *501 learned that the mother was married, it produced birth certificates listing the mother's husband as the father.[1]
This development raised the issue whether the adoption agency had a duty to notify the man listed as the father on the birth certificates about the surrender of the children. The adoption agency protested that it did not. In a written order, the trial court concluded that the Safe Delivery of Newborns Law only applied to the mother in this case and not to the legal father identified on the birth certificates.
II. ANALYSIS
This case concerns the intersection of the Safe Delivery of Newborns Law with the presumption of legitimacy. We review de novo questions of statutory interpretation. Parks v. Parks , 304 Mich.App. 232, 237, 850 N.W.2d 595 (2014). The primary goal of statutory interpretation is to effectuate the Legislature's intent. Sinicropi v. Mazurek , 273 Mich.App. 149, 156, 729 N.W.2d 256 (2006). We do so by applying the statute as written if it is unambiguous. Parks , 304 Mich.App. at 238, 850 N.W.2d 595.
This Court reads the statute as a whole and generally reads statutes covering the same subject matter together. Sinicropi , 273 Mich.App. at 157, 729 N.W.2d 256. However, the Safe Delivery of Newborns Law provides that neither "a provision in another chapter of [the Probate Code, MCL 710.21 et seq. ]" nor the Child Custody Act, MCL 722.21 et seq ., applies to the Safe Delivery of Newborns Law unless specifically stated otherwise. MCL 712.2(3).
*502 A. SAFE DELIVERY OF NEWBORNS LAW
The Safe Delivery of Newborns Law "encourage[s] parents of unwanted newborns to deliver them to emergency service providers instead of abandoning them[.]" People v. Schaub , 254 Mich.App. 110, 115 n. 1, 656 N.W.2d 824 (2002). The statute permits a parent to surrender a *875 child to an emergency service provider within 72 hours of the child's birth. MCL 712.1(2)(k) ; MCL 712.3(1). When the emergency service provider takes temporary custody of the child, the emergency service provider must reasonably try to inform the parent that surrendering the child begins the adoption process and that the parent has 28 days to petition for custody of the child. MCL 712.3(1)(b) and (c). The emergency service provider must furnish the parent with written notice about the process of surrender and the termination of parental rights. MCL 712.3(1)(d). The emergency service provider should also try to inform the parent that, before the child can be adopted, "the state is required to make a reasonable attempt to identify the other parent, and then ask the parent to identify the other parent." MCL 712.3(2)(e). Finally, the emergency service provider must take the newborn to a hospital, if the emergency service provider is not a hospital, and the hospital must take temporary protective custody of the child. MCL 712.5(1). The hospital must notify a child-placing agency about the surrender, and the child-placing agency has various obligations, including making "reasonable efforts to identify, locate, and provide notice of the surrender of the newborn to the nonsurrendering parent" within 28 days, which may require "publication in a newspaper of general circulation in the county where the newborn was surrendered." MCL 712.7(f). *503 Either the surrendering parent, within 28 days of surrender, or the nonsurrendering parent, within 28 days of published notice of surrender, may file a petition to gain custody of the child. MCL 712.10(1). If neither the surrendering parent nor the nonsurrendering parent files a petition for custody within 28 days of surrender or notice of surrender, the child-placing agency must immediately file a petition with the court to terminate the rights of the surrendering parent and the nonsurrendering parent. MCL 712.17(2) and (3). The agency "shall present evidence that demonstrates that the surrendering parent released the newborn and that demonstrates the efforts made by the child placing agency to identify, locate, and provide notice to the nonsurrendering parent." MCL 712.17(4). If the agency meets its burden of proof by a preponderance of the evidence and a custody action has not been filed by the nonsurrendering parent, the trial "court shall enter an order terminating parental rights of the surrendering parent and the nonsurrendering parent under this chapter." MCL 712.17(5). The Safe Delivery of Newborns Law does not define "parent," "surrendering parent," or "nonsurrendering parent." See MCL 712.1(2) (definitions).
B. PRESUMPTION OF LEGITIMACY
When a child is born during a marriage, the child is presumed to be the issue of that marriage. Barnes v. Jeudevine , 475 Mich. 696, 703, 718 N.W.2d 311 (2006). The Revocation of Paternity Act (RPA), MCL 722.1431 et seq ., defines a "presumed father" as "a man who is presumed to be the child's father by virtue of his marriage to the child's mother at the time of the child's conception or birth." MCL 722.1433(e). The RPA governs *504 actions to determine whether a presumed father is actually a child's father. MCL 722.1435(4) ; MCL 722.1441.
A biological father has no standing to seek a declaration of paternity under the Paternity Act, MCL 722.711 et seq ., when the child's mother is married to another man unless a court has previously determined that the child was born out of wedlock. Pecoraro v. Rostagno-Wallat , 291 Mich.App. 303, 311-313, 805 N.W.2d 226 (2011). The Paternity Act defines a child *876 born out of wedlock as "a child begotten and born to a woman who was not married from the conception to the date of birth of the child, or a child that the court has determined to be a child born or conceived during a marriage but not the issue of that marriage." MCL 722.711(a). Until the biological father of a child obtains a declaration of paternity, he has no lawful rights to a child who has a presumed father because "a child may have only one legal father." Helton v. Beaman , 304 Mich.App. 97, 106, 850 N.W.2d 515 (2014), aff'd 497 Mich. 1001, 861 N.W.2d 621 (2015).
C. SYNTHESIS
We conclude that the Safe Delivery of Newborns Law does apply to the husband of a surrendering mother. The trial court's decision and the nonsurrendering parent's argument rely on the fallacy that the child of a married mother could have two legal fathers. The trial court and the nonsurrendering parent are concerned about a situation in which an order terminating the parental rights of the mother and the nonsurrendering parent would only terminate the rights of a biological father but not the husband of the surrendering mother. In this scenario, the husband of *505 the surrendering mother could seek to assert his parental rights to the surrendered child after the child has been adopted.
However, "a child may have only one legal father," Helton , 304 Mich.App. at 106, 850 N.W.2d 515, so the legal father of a child born or conceived during a marriage is presumed to be the mother's husband until that presumption is defeated, Barnes , 475 Mich. at 703, 718 N.W.2d 311. The Safe Delivery of Newborns Law tests this presumption through DNA testing of "each party claiming paternity" and attempting to gain custody of the child, leaving only one as the true legal father. See MCL 712.11(1).
If the nonsurrendering parent has not filed a petition for custody, the Safe Delivery of Newborns Law provides for termination of the parental rights of the nonsurrendering parent. MCL 712.17(3). The Safe Delivery of Newborns Law refers to the "nonsurrendering parent" in the singular, MCL 712.7(f), MCL 712.10(1), and MCL 712.17, and requires a party claiming paternity to submit to DNA testing, MCL 712.11(1). Therefore the parental rights at issue in a surrender proceeding concern the biological father. If a presumed father later appeared to challenge the children's adoption, either he would be precluded from asserting paternity because he was the biological father whose parental rights were terminated, or he would have to demonstrate that he was not the biological father whose parental rights were terminated, effectively defeating the presumption of legitimacy. Accordingly, there are no circumstances in which a party would later be able to challenge the adoption by claiming paternity and asserting his parental rights.
Applying this discussion to the present case, the husband of the surrendering mother was presumed to be the legal father of the children by virtue of the *506 marriage. See MCL 722.1433(e). If the husband had filed a petition for custody of the children within 28 days of published notice of the surrender, see MCL 712.10(1), he would have been required to submit to a DNA test to determine paternity, see MCL 712.11(1). If the testing established that he was not the children's biological father, the trial court would have dismissed his petition for custody. See MCL 712.11(5). This dismissal would be consistent with the rules governing the presumption of legitimacy. The DNA test would have demonstrated that the children *877 were not the issue of the marriage, thereby defeating the presumption of legitimacy. See 722.711(a); Barnes , 475 Mich. at 703, 718 N.W.2d 311. On the other hand, if the husband of the surrendering mother was the biological father, the trial court would have held a best-interest hearing to determine the children's custody. See MCL 712.14. If the children's biological father never claimed paternity or petitioned for custody, the child placing agency would have had to "immediately file a petition with the court to determine whether the court shall enter an order terminating the rights of the nonsurrendering parent." MCL 712.17(3).
In this case, no one claimed paternity. If the trial court terminates the parental rights of the nonsurrendering parent and the husband of the surrendering mother later seeks to assert his parental rights, he would have to demonstrate that he was not the biological father to show that the order terminating parental rights did not apply to him. However, in doing so, he would be defeating the presumption of paternity, and he would be without parental rights to assert to disrupt an adoption. Accordingly, the termination proceedings under the Safe Delivery of Newborns Law apply to the legal father of the children.
*507 We reverse and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.
Beckering and Stephens, JJ., concurred with O'Connell, P.J.

Effective January 28, 2018, a birth certificate for a newborn surrendered under the Safe Delivery of Newborns Law must list the parents as " 'unknown' and the newborn ... as 'Baby Doe.' " 2017 PA 142.