*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* BABY BOY DOE, Minor.

---

PETER KRUITHOFF,

        Petitioner-Appellant,

v

CATHOLIC CHARITIES OF WEST MICHIGAN,

        Respondent-Appellee.

FOR PUBLICATION
August 26, 2021

No. 353796
Kalamazoo Circuit Court
Family Division
LC No. 2018-006540-NB

---

Before: RONAYNE KRAUSE, P.J., and BECKERING and BOONSTRA, JJ.

RONAYNE KRAUSE, P.J. *(dissenting)*

I respectfully dissent. The majority thoroughly recites the relevant facts and applicable law. Petitioner has indeed suffered a grievous loss. However, I conclude that the Safe Delivery of Newborns Law (SDNL), MCL 712.1 *et seq*, simply does not permit the remedy crafted by the majority on these facts. The Legislature made a policy choice under which other considerations take precedence over petitioner's rights. Therefore, any remedy must come from the Legislature, not from this Court. I believe the majority, although understandably frustrated, deviates from what is permitted by law.

As the majority recites, MCL 712.10(1) provides, in relevant part, that "[n]ot later than 28 days after notice of surrender of a newborn has been published, an individual claiming to be the nonsurrendering parent of that newborn may file a petition with the court for custody." I agree with the majority that the above sentence imposes a deadline: in this case, the notice of surrender was published on August 16, 2018, so an appropriate petition must have been filed by September 13, 2018. I also agree with the majority's determination that *if* petitioner's Ottawa County complaint for divorce and custody constituted a "petition for custody" within the meaning of MCL 712.10(1), then it was properly filed in Ottawa County, notwithstanding the fact that the termination proceeding was held in Kalamazoo County. I respectfully disagree with the majority's

conclusion that the Ottawa County complaint for divorce and custody may, at least on these facts, be considered a "petition for custody" within the meaning of MCL 712.10(1).

The most obvious reason why the Ottawa County petition for divorce and custody was, pursuant to the plain language of the statute, not a proper petition under the SDNL is simply that the child had not yet even been born, let alone surrendered. Therefore, it was literally impossible for petitioner to have "claim[ed] to be the nonsurrendering parent of [a] newborn." Indeed, MCL 712.10(2) provides,

> If the court in which the petition for custody is filed did not issue the order placing the newborn, the court in which the petition for custody is filed shall locate and contact the court that issued the order and shall transfer the proceedings to that court.

In other words, the statute is, by its plain language, premised upon the newborn having already been placed,[1] and therefore necessarily already born and surrendered. In addition, elsewhere in the SDNL are references to custody petitions or proceedings being filed specifically under MCL 712.10. See MCL 712.7(c), MCL 712.10(3), MCL 712.11(1), MCL 712.11(2), MCL 712.17(3). Although not expressly stated in so many words, it is readily apparent that the Legislature intended that a custody petition under the SDNL must be *specifically* brought *under the SDNL*. The Ottawa County petition was therefore not the proper kind of petition to invoke any procedures under the SDNL.

I do not disagree with the majority that, in principle, if a statute sets a deadline after some triggering event, but the statute does not expressly require the filing to occur after any particular time, a filing could potentially be timely even if filed before that triggering event. See *Fischer-Flack, Inc v Churchfield*, 180 Mich App 606, 609-613; 447 NW2d 813 (1989) (notice held timely where it was provided before furnishing materials, notwithstanding statute requiring notice to be provided "within 20 days after" furnishing materials); *People v Marshall*, 298 Mich App 607, 625-627; 830 NW2d 414 (2012), vacated in part on other grounds 493 Mich 1020 (2013) (habitual-offender notice held timely because defendant was not arraigned, so deadline of "within 21 days after the defendant's arraignment" was never triggered). However, all things are not equal here. As discussed, the SDNL requires the "petition for custody" under MCL 712.10 to be founded upon a surrender of a newborn having already occurred. Although the statute does not explicitly forbid, in so many words, a pre-surrender petition, the statute also does not explicitly permit a pre-surrender petition. Given the clear intent of the Legislature, I conclude that it would require impermissibly reading language into the SDNL to permit a pre-surrender petition to be considered timely under that statute.

The majority also takes issue with the reasonableness of respondent's efforts to provide notice to petitioner under MCL 712.7(f). The majority implicitly also analogizes to general principles of due process, which does not require notice to be successful, but does require a good-faith effort under the circumstances to try to achieve actual notice. *Sidun v Wayne Co Treasurer*, 481 Mich 503, 509-510; 751 NW2d 453 (2008). Once again, I do not disagree in principle that

---

[1] Presumably pursuant to MCL 712.7(e).

MCL 712.7(f) requires the agency to provide notice by publication if the nonsurrendering parent is unknown, and it also imposes an independent requirement of making "reasonable efforts" to communicate notice to the nonsurrendering parent. However, it does not follow that, under these circumstances, it was necessarily unreasonable to do nothing more than post notice by publication. In fact, the majority outlines precisely why there was effectively nothing more that respondent *could* do: the only thing it knew was that KGK was married. I do not know offhand how many married people there are in Michigan, but even if respondent had scoured every single marriage record in the state, I am unable to imagine how respondent could have deduced that petitioner was Doe's father.[2] As the majority states, reasonableness depends on the circumstances. The law generally does not obligate anyone to expend resources making clearly futile gestures. See *Cichecki v City of Hamtramck, Police Dep't*, 382 Mich 428, 437; 170 NW2d 58 (1969).

Even if the Ottawa County petition could be considered a properly filed petition for custody under MCL 712.10, the remedy crafted by the majority would still be improper. First, even if there was any legal or rational basis for challenging the reasonableness of respondent's efforts to locate petitioner, it should not be necessary to unseal the entire adoption record to make that inquiry. A more appropriate remedy would be for the trial court to conduct an *in camera* review of the records to determine whether there is any evidence that respondent knew more about Doe and KGK than just the fact that KGK was married. The trial court could then, as appropriate, and if any such evidence was actually present, order release of properly redacted documentation or pass on the relevant information. Such a limited remedy would, at least, be consistent with the purposes of the statutory confidentiality provisions, and would still permit respondent to make a meaningful argument regarding the reasonableness of respondent's efforts with the benefit of that knowledge—if any.

Furthermore, as this Court has explained, and as expressly set forth by statute, the proper procedure would have been to hold a hearing to "determine custody of the newborn based on the newborn's best interest." MCL 712.14; *In re Miller*, 322 Mich App 497, 506; 912 NW2d 872 (2018). As a general matter, custody best-interests analyses require consideration of the facts and circumstances as they exist at the time of that hearing, even if that hearing is held after remand due to an error in earlier proceedings. See *Fletcher v Fletcher*, 447 Mich 871, 889; 526 NW2d 889 (1994). It has now been more than two years since the Kalamazoo circuit court granted Doe's prospective adoptive parents' petition to adopt Doe, and Doe is almost three years old. Even if that adoption had been legally erroneous, which I do not accept, the majority's resolution of this appeal is contrary to the plain language of the statute. The majority's resolution also appears to presume that it would somehow be in Doe's best interest—the standard under the SDNL—to rip him from the arms of the only family he has known and place him with a stranger, as if Doe was

---

[2] Indeed, even if respondent had also known that divorce proceedings had been initiated against KGK, and respondent had requested a copy of all records of all pending divorce proceedings in Kalamazoo County, and respondent had some way to divine a connection between an unidentified baby and any particular husband, respondent *still* would not have discovered petitioner, because the divorce proceeding was pending in Ottawa County.

somehow a mere piece of property instead of a living person. Again, I agree that petitioner has suffered a grievous loss, but the overarching goal of the SDNL is the protection of children.

It is certainly within the purview of the courts to point out that the Legislature has chosen a policy with consequences it may not have anticipated, but ultimately, the wisdom or propriety of legislative policy is the sole province of the Legislature. The Legislature enacted a statutory scheme to "encourag[e] parents of unwanted newborns to deliver them to emergency service providers instead of abandoning them." See *People v Schaub*, 254 Mich App 110, 115 n 1; 656 NW2d 824 (2002). That scheme includes provisions to address situations in which the newborn is only unwanted by one of the parents. That scheme requires emergency service providers to ask surrendering parents for identifying information, but it expressly does not require the surrendering parent to disclose any such information. MCL 712.3(2). The Legislature presumably understood the implications: that it was possible a nonsurrendering parent would therefore be unknowable and unfindable. The Legislature therefore enacted a policy that prefers to err on the side of protecting the safety of the child and of the surrendering parent, even at the possible detriment to the nonsurrendering parent. I appreciate the majority's frustration with such a scheme, but it is not for us to decide that it is wrong and therefore bypass the plain language of the statute.

I would affirm.

/s/ Amy Ronayne Krause