*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BABY BOY DOE, Minor.

---

PETER KRUITHOFF,

        Petitioner-Appellant,

v

CATHOLIC CHARITIES OF WEST MICHIGAN,

        Respondent-Appellee.

FOR PUBLICATION
August 26, 2021
9:20 a.m.

No. 353796
Kalamazoo Circuit Court
Family Division
LC No. 2018-006540-NB

---

Before: RONAYNE KRAUSE, P.J., and BECKERING and BOONSTRA, JJ.

BOONSTRA, J.

Petitioner appeals by delayed leave granted the trial court's order denying his motion to unseal a sealed adoption file. Following the entry of that order, the trial court denied petitioner's motion for reconsideration, in which he additionally requested that the trial court reinstate his parental rights to Baby Boy Doe (Doe). Petitioner raised both issues in his delayed application for leave to appeal, and this Court granted the application "limited to the issues raised in the application and supporting brief."[1] Underlying this matter is a series of conflicting orders independently entered by two circuit courts, each apparently acting largely without knowledge of the actions of (or the proceedings pending before) the other. We vacate in part, reverse in part, and remand for further proceedings.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On August 8, 2018, petitioner initiated a divorce proceeding against his then-pregnant wife, KGK, in the family division of the Ottawa Circuit Court (the Ottawa court); petitioner additionally

---

[1] *In re Doe*, unpublished order of the Court of Appeals, entered August 31, 2020 (Docket No. 353796).

sought custody of his then-unborn child. Petitioner resided in Ottawa County at the time he filed for divorce, while KGK resided in Muskegon County.

The following day, August 9, 2018, unbeknownst to petitioner or the Ottawa court, KGK gave birth to a male child (Doe) at the Butterworth Campus of Spectrum Health Hospitals in Grand Rapids. On August 10, 2018, the Ottawa court entered an ex parte order for DNA testing of the child that was carried by KGK and an ex parte restraining order prohibiting either petitioner or KGK from taking "any action pertaining to the permanent placement or adoption of the defendant's unborn child pending further order of the court." The record before us[2] does not contain a proof of service or other indication that this order was served on KGK; petitioner's counsel later represented at a motion hearing that she was served with a copy of the complaint for divorce and the ex parte order sometime in September 2018.

KGK surrendered Doe at the hospital on August 12, 2018, under Michigan's Safe Delivery of Newborns Law (SDNL), MCL 712.1 *et seq*. KGK declined to provide any information regarding the birth father's identity, but did indicate that she was married.[3] She also refused to sign a "Voluntary Release For Adoption Of A Surrendered Newborn by Parent" form because she did not want her name appearing on any legal documents. The hospital placed Doe with respondent, a nonprofit agency that provides, among other services, child placement and adoption services.

On August 15, 2018, again unbeknownst to petitioner or the Ottawa court, respondent petitioned the family division of the Kalamazoo County Circuit Court (the Kalamazoo court) for permission to place Doe with prospective adoptive parents. The Kalamazoo court entered an order authorizing placement on August 16, 2018. However, Doe was not placed with the prospective adoptive parents until August 25, 2018, because he was born with a methadone addiction and required additional medical care. Also on August 16, 2018, a "Publication of Notice, Safe Delivery of Newborns" was published in the Grand Rapids Press. This notice contained no names, but was merely addressed, generically, to the birth mother and father of "a newborn baby, born on August 9, 2018 at Spectrum Health Grand Rapids, MI." Twenty-eight days passed without a response to the publication being received by the Kalamazoo court.

On September 14, 2018, respondent petitioned the Kalamazoo court to accept the release of the surrendering parent and terminate the parental rights of both the surrendering and nonsurrendering parents. Meanwhile, on September 21, 2018, the Ottawa court entered an order awarding petitioner temporary physical and legal custody of Doe. On September 28, 2018, the Kalamazoo court held a hearing on respondent's termination petition. The court found that the

---

[2] The Ottawa court file is not part of the record on appeal, inasmuch as this appeal arises out of Kalamazoo County.

[3] Petitioner asserts that KGK gave hospital staff her maiden name. At the motion hearing on petitioner's motion to unseal the adoption records, counsel for petitioner stated that KGK's maiden name was "in the hospital records" transferred from the hospital to respondent. Those records are not a part of the record provided to this Court. However, respondent has not challenged this assertion by petitioner.

surrendering parent (KGK) had knowingly released her rights to Doe, and that "[t]he nonsurrendering parent has not been identified or located, and the child-placing agency has made reasonable efforts to provide notice of the surrender of the newborn." The Kalamazoo court then terminated the parental rights of both of Doe's parents (i.e., both petitioner and KGK) and granted custody of Doe to respondent.

On January 16, 2019, petitioner issued a third-party subpoena to respondent as part of the ongoing Ottawa court proceeding, requesting that respondent produce "any and all records regarding Baby Boy Doe, date of birth August 9, 2018 at Spectrum Health in Grand Rapids, Michigan to mother [KGK]." Petitioner issued the subpoena after taking the deposition of KGK, during which she revealed that she had surrendered Doe and that the child had been placed with respondent to facilitate his adoption. On February 1, 2019, respondent filed a motion to quash the subpoena on the ground that respondent's placement records were confidential and that disclosure of a placement agency's records without a court order constituted a criminal offense under MCL 712.2a(2), (3).

On February 12, 2019, the Kalamazoo court granted the prospective adoptive parents' petition to adopt Doe.

On February 25, 2019, the Ottawa court heard arguments on respondent's motion to quash. The court held that petitioner was entitled to be informed of where the "Safe Delivery action" was proceeding, "so [petitioner] can pursue custody there." The court directed respondent to provide petitioner with a copy of the pleadings filed in the "Safe Delivery action," with the names and identifying information of the adoptive parents redacted from the pleadings. The parties disputed the language of the proposed order for several months; on June 10, 2019, an order was finally entered reflecting the Ottawa court's ruling.[4]

On July 30, 2019, the Ottawa court entered a judgment of divorce, which granted petitioner full physical and legal custody of Doe.

On October 16, 2019, petitioner moved the Kalamazoo court to unseal the adoption file of Doe and provide petitioner with access to all of the information contained in that file. His motion stated in relevant part:

> 52. The Michigan Safe Delivery Act provides that the emergency service provider to whom the newborn was surrendered has to provide the adoption agency "any information, either written or verbal, that was provided by and to the parent who surrendered the newborn."

> 53. The Michigan Safe Delivery Act provides that the adoption agency shall, "within 28 days, make reasonable efforts to identify, locate, and provide

---

[4] Respondent's counsel apparently mistakenly represented to the Ottawa court that the Safe Delivery action was pending in Kent County, not Kalamazoo County. Petitioner represents that he was not aware of the correct venue for the action until July 12, 2019, when he received from respondent the information that the Ottawa court ordered respondent to produce.

notice of the surrender of the newborn to the nonsurrendering parent. The child placing agency shall file a written report with the court that issued the order placing the child. The report shall state the efforts the child placing agency made in attempting to identify and locate the nonsurrendering parent and the results of those efforts. If the identity and address of the nonsurrendering parent are unknown, the child placing agency shall provide notice of the surrender of the newborn by publication in a newspaper of general circulation in the county where the newborn was surrendered."

54. Petitioner is in need of access to the entire adoption file, as he is the legal father of Baby Boy Doe.

55. Petitioner does not believe that Catholic Charities of West Michigan made reasonable efforts to identify and locate him.

56. Petitioner has no reason to rely on the accuracy of the disclosures of Catholic Charities West Michigan as they hid the location of the probate case from him and did not inform him of the impending final order of adoption once Catholic Charities knew he was seeking information on the adoption.

57. Furthermore, Catholic Charities of West Michigan sent Petitioner documents indicating that the Court knew of [sic, or?] should have known that the surrendering mother was married at the time of birth.

Respondent responded, arguing that MCL 712.2(a)(1) provides that the adoption records are subject to strict confidentiality and only the parties to the adoption proceeding are entitled to those records. According to respondent, petitioner was not a party to the Doe adoption proceedings, and thus was not entitled to disclosure of the records. Respondent also argued that petitioner's claim that it had failed to use reasonable efforts to identify the nonsurrendering parent was both "legally irrelevant" and factually inaccurate. Respondent asserted that petitioner had failed to identify any legal basis that would allow the Kalamazoo court to grant the requested relief.

The Kalamazoo court held a hearing on petitioner's motion on December 10, 2019. After hearing the parties' arguments, the court ruled from the bench:

They have got the legislature, the Court of Appeals, everybody has said this is secure haven. I understand you are arguing that mom went rouge [sic] and she had a duty – or somebody had a duty to let dad know what's going on, I mean that is really the heat [sic] of your argument, I get it. It is unfortunate for him.

She is going to the hospital, telling the hospital there – there has been – what did she say – there has been abuse – domestic violence – I don't remember her exact terms and that the best interest [f]or my baby is for me to give my baby up. The hospital can't ask any questions, takes the baby, contacts the people on the list. Catholic Charities gets the baby placed. No questions by law can be asked.

I don't have any clear and convincing evidence of any legal argument from you why the confidential records for an adoption should be opened up in this case. There is nothing unique.

Other than the statute never addresses what happens if there is really no actual notice. There is legal notice. How many times – I don't know what kind of law you guys do, but I don't know how many times this Court has had published notice in the Climax Crescent, some tiny little newspaper within the county, but it is general circulation, meets the criteria of the statute. Do we think dad had actual notice? Probably not, but did he get legal notice? Absolutely.

I find that dad got legal notice. Did mom bamboozle everybody? Maybe. But that in and of itself is not a reason to change the confidential records and open up Pandora's Box and let we just assure you everything that Catholic Charities gave to this Court Ottawa County has already given you, just redacted with the third – innocent third parties names on it and the information about them.

So I really don't think our files would have anymore to give you. You got the orders, you have submitted them to us and we've got the information that Catholic Charities already gave you. That's all that there is.

\* \* \*

Sure, but I really don' ' [sic] want to unseal our adoptive records. I don't think you've shown anything that shows that anything was violated, that there is any good cause.

I find this very interesting. The only concern that I have is I really think the legislature needs to tweak the law about notice. It is unfortunate that, you know, there is no requirement that the publication shall be where the mother resides or where the father resides or that shall be some notice a legal father [sic], but again the domestic violence people would be all up in arms to have that for this very reason. Mom is saying there is domestic violence. She is protecting herself allegedly and her baby. She doesn't want that baby to go to dad. I don't know. I don't know what the facts are, but we certainly have lots of cases like that.

So I have to follow the law until the legislature changes it. In fact, *In re Miller* confirms the legislature's intent.

The Kalamazoo court entered an order consistent with its ruling on January 2, 2020. Petitioner subsequently moved for reconsideration, arguing that the trial court had erred by not unsealing the adoption records so that he could determine whether respondent had made reasonable efforts to provide him with notice under the SDNL. In addition, petitioner advanced a new argument—that he had timely filed a petition for custody "within 28 days after the newborn is surrendered" as required by MCL 712.10(1) by filing for his divorce/custody action in the Ottawa court shortly before Doe's birth. Therefore, petitioner argued, the Kalamazoo court had erred by terminating his parental rights to Doe, and those rights should be reinstated. Without addressing

-5-

the termination issue, the trial court entered an order denying petitioner's motion for reconsideration, stating:

> This matter having come before the Court on Petitioner's Motion for Reconsideration; the Court having read the parties' submissions and review of the testimony provided on the record on December 10, 2019, Petitioner's Motion for reconsideration is denied. The adoption records at issue shall remain sealed.

This appeal followed, by delayed leave granted. Petitioner's application for appeal raised two issues: (1) whether petitioner was entitled to have his parental rights reinstated and (2) whether the Kalamazoo court erred by not unsealing the adoption file.

## II. TERMINATION OF PARENTAL RIGHTS

Petitioner argues that the Kalamazoo court erred by terminating his parental rights as a nonsurrendering parent under the SDNL. We agree. As discussed, it was in his motion for reconsideration that petitioner first raised the argument that his divorce action in Ottawa County was a "petition for child custody" under the SDNL, and the trial court did not specifically address that argument in its denial. This argument is therefore unpreserved. See *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 519; 773 NW2d 758 (2009). However, this Court "may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006).

We review for plain error unpreserved issues regarding the termination of parental rights. See *In re Utrera*, 281 Mich App 1, 8-9; 761 NW2d 253 (2008). We review issues of statutory interpretation de novo. *Eggleston v Bio–Med Applications of Detroit, Inc*, 468 Mich 29, 32; 658 NW2d 139 (2003).

This Court recently summarized the operation of the SDNL in *In re Miller*, 322 Mich App 497, 502-503; 912 NW2d 872 (2018):

> The Safe Delivery of Newborns Law "encourage[s] parents of unwanted newborns to deliver them to emergency service providers instead of abandoning them[.]" *People v Schaub*, 254 Mich App 110, 115 n 1; 656 NW2d 824 (2002). The statute permits a parent to surrender a child to an emergency service provider within 72 hours of the child's birth. MCL 712.1(2)(k); MCL 712.3(1). When the emergency service provider takes temporary custody of the child, the emergency service provider must reasonably try to inform the parent that surrendering the child begins the adoption process and that the parent has 28 days to petition for custody of the child. MCL 712.3(1)(b) and (c). The emergency service provider must furnish the parent with written notice about the process of surrender and the termination of parental rights. MCL 712.3(1)(d). The emergency service provider should also try to inform the parent that, before the child can be adopted, "the state is required to make a reasonable attempt to identify the other parent, and then ask the parent to identify the other parent." MCL 712.3(2)(e). Finally, the emergency

service provider must take the newborn to a hospital, if the emergency service provider is not a hospital, and the hospital must take temporary protective custody of the child. MCL 712.5(1). The hospital must notify a child-placing agency about the surrender, and the child-placing agency has various obligations, including making "reasonable efforts to identify, locate, and provide notice of the surrender of the newborn to the nonsurrendering parent" within 28 days, which may require "publication in a newspaper of general circulation in the county where the newborn was surrendered." MCL 712.7(f).

Either the surrendering parent, within 28 days of surrender, or the nonsurrendering parent, within 28 days of published notice of surrender, may file a petition to gain custody of the child. MCL 712.10(1). If neither the surrendering parent nor the nonsurrendering parent files a petition for custody within 28 days of surrender or notice of surrender, the child-placing agency must immediately file a petition with the court to terminate the rights of the surrendering parent and the nonsurrendering parent. MCL 712.17(2) and (3). The agency "shall present evidence that demonstrates that the surrendering parent released the newborn and that demonstrates the efforts made by the child placing agency to identify, locate, and provide notice to the nonsurrendering parent." MCL 712.17(4). If the agency meets its burden of proof by a preponderance of the evidence and a custody action has not been filed by the nonsurrendering parent, the trial "court shall enter an order terminating parental rights of the surrendering parent and the nonsurrendering parent under this chapter." MCL 712.17(5). The Safe Delivery of Newborns Law does not define "parent," "surrendering parent," or "nonsurrendering parent." See MCL 712.1(2) (definitions). [*Id*.]

Petitioner argues that the complaint in the Ottawa court constituted a petition for custody of Doe that was timely filed under MCL 712.10(1). We agree. MCL 712.10(1) provides:

If a surrendering parent wants custody of a newborn who was surrendered under section 31 of this chapter, the parent shall, within 28 days after the newborn was surrendered, file a petition with the court for custody. *Not later than 28 days* after notice of surrender of a newborn has been published, an individual claiming to be the nonsurrendering parent of that newborn may *file a petition with the court for custody*. The surrendering parent or nonsurrendering parent shall file the petition for custody in 1 of the following counties:

(a) If the parent has located the newborn, the county where the newborn is located.

(b) If subdivision (a) does not apply and the parent knows the location of the emergency service provider to whom the newborn was surrendered, the county where the emergency service provider is located.

(c) If neither subdivision (a) nor (b) applies, the county where the parent is located. [Emphasis added.]

The Legislature is presumed to have intended the meaning it has plainly expressed in statutory language. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). Therefore, nothing will be read into a clear statute that is not within the manifest intention of the Legislature as derived from the language of the statute itself. *Mich Ed Ass'n v Secretary of State* (*On Rehearing*), 489 Mich 194, 218; 801 NW2d 35 (2011). The provisions of a statute should be construed reasonably and in context, and terms given their plain and ordinary meaning unless otherwise defined in the statute. *Pace v Edel-Harrelson*, 499 Mich 1, 7; 878 NW2d 784 (2016); *In re Wirsing*, 456 Mich 467, 474; 573 NW2d 51 (1998). If the plain and ordinary meaning of statutory language is clear, no judicial construction is permitted. *Pace*, 499 Mich at 7.

In this case, it is undisputed that (1) petitioner was not aware of the county where Doe was located or the county where Doe was surrendered until after petitioner's parental rights were terminated; (2) Ottawa County was where petitioner was located; and (3) petitioner filed his complaint for divorce/custody in Ottawa County. Therefore, if his complaint constituted a "petition for custody" of Doe, then it was filed in the correct county.[5]

We conclude that petitioner's complaint in the Ottawa court was a petition for custody of Doe. When terms are not defined in a statute, a court may consult a dictionary to ascertain their common meaning. See *Epps v 4 Quarters Restoration LLC*, 498 Mich 518, 529; 872 NW2d 412 (2015). A petition is "[a] formal written request presented to a court or other body." Black's Law Dictionary (11th ed). This Court has referred to a marital partner's "right to petition for divorce." *Skaates v Kayser*, 333 Mich App 61, 83; 959 NW2dd 33 (2020). And although the record of the proceedings in the Ottawa court was not provided to this Court, it is undisputed that the complaint for divorce sought a legal resolution to the issue of the custody of (the then-as-yet-unborn) Doe, and that petitioner requested that the court award him custody of Doe. In fact, the next action taken by petitioner after filing the complaint was to secure an *ex parte* order preventing *either* parent from taking "any action pertaining to the permanent placement or adoption of the defendant's unborn child pending further order of the court." Clearly, petitioner sought to have the Ottawa court determine the issue of custody, and in fact took steps to prevent either parent from doing anything that affected custody without permission of the court.

Further, the complaint was filed "not later than 28 days after notice of surrender of a newborn has been published." The complaint for divorce was filed on August 8, 2018, and the first order regarding custody in the case was entered on August 10. The notice of surrender was published on August 16, 2018. Nothing in the plain language of MCL 712.10(1) precludes the filing of a petition for custody by a nonsurrendering parent *before* a notice of surrender is

---

[5] MCL 712.10(2) states that "[i]f the court in which the petition for custody is filed did not issue the order placing the newborn, the court in which the petition for custody is filed shall locate and contact the court that issued the order and shall transfer the proceedings to that court." We note that this subsection imposes no further duties on a petitioning parent regarding such a transfer. MCL 712.14 provides the procedure for holding a hearing on a petition for custody, and requires the court to "determine custody of the newborn based on the newborn's best interest." MCL 712.14(1).

published, or sets any time limit on such an advance filing. *Pace*, 499 Mich at 7. The word "not" is a function word that serves to "make negative of group of words or a word"—in this case, the words "later than 28 days after" notice of surrender has been published. *Merriam-Webster's Collegiate Dictionary* (11th ed), p 848. The word "later" means "at some time subsequent to a given time; [s]ubsequently, afterward." *Id.* at 703. The plain and ordinary meaning of the phrase "not later than 28 days after" in MCL 712.10(1) therefore simply means a petition may not be filed more than 28 days after the publication of the notice of surrender.[6] Consequently, the Ottawa County complaint was not only a petition for custody of Doe that was filed in the correct location, but it was also timely filed.

MCL 712.17(3) provides that "*[i]f the nonsurrendering parent has not filed a petition for custody of the newborn within 28 days of notice of surrender of a newborn*," then "the child placing agency with authority to place the newborn shall immediately file a petition with the court to determine whether the court shall enter an order terminating the rights of the nonsurrendering parent." (Emphasis added). MCL 712.17(4) further requires the court to have a hearing on any such petition, at which child placing agency "shall present evidence that demonstrates that the surrendering parent released the newborn and that demonstrates the efforts made by the child placing agency to identify, locate, and provide notice to the nonsurrendering parent." MCL 712.17(5) states that "[i]f the court finds by a preponderance of the evidence that the surrendering parent has knowingly released his or her rights to the child and that reasonable efforts were made to locate the nonsurrendering parent *and a custody action has not been filed*, the court shall enter an order terminating parental rights of the surrendering parent and the nonsurrendering parent under this chapter." (Emphasis added).

Because petitioner had properly and timely filed a petition for custody of Doe, the petition to terminate petitioner's parental rights filed by respondent in this case was filed in violation of MCL 712.17(3), and the Kalamazoo court's subsequent entry of a termination order was in violation of MCL 712.17(5). This was plain error affecting substantial rights. *Utrera*, 281 Mich App at 8-9. While respondent and the Kalamazoo court may not have been aware, at the time of the termination order, that petitioner had filed a petition for custody, the fact remains that he had, and the actions of respondent and the Kalamazoo court were therefore in error.[7] *Id.* In any event,

---

[6] We note also that the Legislature chose to require the surrendering parent to file a petition "within" 28 days after surrender, but to require the nonsurrendering parent to file a petition "not later than" 28 days after the notice was filed. The use of different terms suggests different meanings. *United States Fidelity Ins & Guaranty Co v Mich Catastrophic Claims Ass'n* (*On Rehearing*), 484 Mich 1, 14; 795 NW2d 101 (2009). While it would be illogical to give effect to a petition for custody filed by the surrendering parent that was filed *before* the surrender, because the act of surrender itself necessarily indicates a present desire to give up custody of the child, the same is not true of a nonsurrendering parent, who may be attempting, as seems to be the case here, to secure his or her parental rights against the possibility of a future surrender of a child by the other parent.

[7] We note that MCL 712.17(4) requires a child placing agency to present evidence at the termination hearing concerning its efforts to identify, locate, and provide notice to the

-9-

the Kalamazoo court had been made aware of the divorce/custody action well before it decided petitioner's motion for reconsideration, and therefore plainly erred by denying it. *Id*.[8]

*Miller* does not compel a different result. In a subsequent hearing on petitioner's motion to unseal the adoption file, the Kalamazoo court stated that *Miller* prevented a non-surrendering husband from asserting parental rights once they had been terminated in a proceeding under the SNDL and that a husband in that situation "would be without parental rights to assert—to disrupt an adoption." This analysis neglects a critical portion of our holding in *Miller*. In *Miller*, this Court indeed concluded that "the Safe Delivery of Newborns Law applies to the husband of a surrendering mother in that the husband may not later assert parental rights." *Miller*, 322 Mich App at 500. But it did so in the context of *no petition for custody having been filed*. *Id*. at 506. This Court described the procedure that should be followed when the husband of a surrendering mother does file such a petition, and contrasted that with what happened in the case before it:

> If the husband had filed a petition for custody of the children within 28 days of published notice of the surrender, see MCL 712.10(1), he would have been required to submit to a DNA test to determine paternity, see MCL 712.11(1). If the testing established that he was not the children's biological father, the trial court would have dismissed his petition for custody. See MCL 712.11(5). This dismissal would be consistent with the rules governing the presumption of legitimacy. The DNA test would have demonstrated that the children were not the issue of the marriage, thereby defeating the presumption of legitimacy. See 722.711(a); *Barnes*, 475 Mich. at 703, 718 N.W.2d 311. On the other hand, if the husband of the surrendering mother was the biological father, the trial court would have held a best-interest hearing to determine the children's custody. See MCL 712.14. *If the children's biological father never claimed paternity or petitioned for custody*, the child placing agency would have had to "immediately file a petition with the court to determine whether the court shall enter an order terminating the rights of the nonsurrendering parent." MCL 712.17(3).

> *In this case, no one claimed paternity*. If the trial court terminates the parental rights of the nonsurrendering parent and the husband of the surrendering mother later seeks to assert his parental rights, he would have to demonstrate that he was not the biological father to show that the order terminating parental rights did not apply to him. However, in doing so, he would be defeating the presumption

---

[8] nonsurrendering parent; it does not require a child placing agency to present evidence regarding whether a petition for custody has been filed. This suggests to us that the requirement of MCL 712.17(5) that the trial court make certain findings "by a preponderance of the evidence" was not intended to require the trial court to make a *finding* about whether a custody action had been filed; rather, the phrase in MCL 712.17(5) that "a custody action has not been filed" sets forth a prerequisite that must be fulfilled before the court is authorized to terminate parental rights.

[8] We also note that respondent appears to have been aware (by virtue of petitioner's January 16, 2019 subpoena) of petitioner's custody interest before the Kalamazoo court entered its February 12, 2019 adoption order.

of paternity, and he would be without parental rights to assert to disrupt an adoption. Accordingly, the termination proceedings under the Safe Delivery of Newborns Law apply to the legal father of the children. [*Id*. (emphasis added).]

In other words, *Miller* held generally that the termination of the parental rights of a nonsurrendering husband under the SDNL is valid; it did not hold that nonsurrendering parents were prohibited from challenging whether those procedures were in fact followed correctly. As we have discussed, in this case they were not. *Miller* does not prevent us from granting relief to petitioner.

## III. MOTION TO UNSEAL ADOPTION FILE

Petitioner also argues that the Kalamazoo court erred by denying his motion to unseal the adoption file. We conclude that further proceedings are warranted in light of our determination that petitioner's parental rights were terminated erroneously. We review issues of statutory interpretation de novo. *Eggleston v Bio–Med Applications of Detroit, Inc*, 468 Mich at 32. We review a trial court's findings of fact for clear error. MCR 2.613(C).

MCL 712.2a(1) provides that "[a] hearing under this chapter is closed to the public. A record of a proceeding under this chapter is confidential, except that the record is available to any individual who is a party to that proceeding." MCL 712.2a(2) further states that "[a]ll child placing agency records created under this chapter are confidential except as otherwise provided in the provisions of this chapter."

In this case, the Kalamazoo court held that petitioner could not challenge the termination of his parental rights under *Miller*. As discussed, this holding was erroneous (although, in fairness to the court, it was only in his motion for reconsideration that petitioner specifically raised the issue of whether the Ottawa court complaint constituted a petition for custody under the SDNL). The court also stated that it had reviewed the sealed file and found that "everything [respondent] gave to this Court[,] Ottawa County has already given to you, just redacted with the third – innocent third parties names on it and the information about them." The court added: "So I really don't think our files would have anymore to give you. You've got the orders, you have submitted them to us and we've got the information that Catholic Charities already gave you. That's all that is there."

Petitioner's stated purpose in seeking to have the adoption records unsealed was to permit him to challenge the efforts made by respondent to identify and locate him, in order to provide him with notice of Doe's surrender. The court found that petitioner had been given all of the evidence it had relied upon in making its determination that petitioner had been given adequate notice of Doe's surrender. It is unclear to us whether the court's statements were a specific factual finding, or more in the nature of reassurance to petitioner. And it is possible that its failure to grant petitioner's motion is harmless error. MCR 2.613(A). However, as we have discussed, there was a legal error concerning the termination of petitioner's parental rights. That being the case, we conclude that the Kalamazoo court's orders denying petitioner's motion and denying reconsideration should be vacated. On remand, the Kalamazoo court should consider petitioner's request (if petitioner renews it) in the context of our holding regarding the termination of petitioner's parental rights.

-11-

Relatedly, we note that petitioner has argued at various points in the proceedings that the efforts undertaken by respondent to identify and locate him, in order to provide him with notice of Doe's surrender, were not reasonable, and that his motion to unseal the records in this case was part of his effort to challenge the reasonableness of those efforts. In light of our holding in Section II of this opinion, we could opt not to address the reasonableness of respondent's efforts. However, we believe it important to note our disagreement with the Kalamazoo court's apparent interpretation of MCL 712.7 as providing that publication of a notice, for one day, which merely generically states the newborn's date of delivery and hospital location, in a newspaper published in a county in which neither parent resides, constitutes "reasonable efforts to identify, locate, and provide notice of the surrender of the newborn to the nonsurrendering parent." MCL 712.7(f). We interpret the provision differently. MCL 712.7(f) provides that the child placing agency shall:

> Within 28 days, make reasonable efforts to identify, locate, and provide notice of the surrender of the newborn to the nonsurrendering parent. The child placing agency shall file a written report with the court that issued the order placing the child. The report shall state the efforts the child placing agency made in attempting to identify and locate the nonsurrendering parent and the results of those efforts. If the identity and address of the nonsurrendering parent are unknown, the child placing agency shall provide notice of the surrender of the newborn by publication in a newspaper of general circulation in the county where the newborn was surrendered.

This provision, by its plain language, see *Pace*, 499 Mich at 7, does not indicate that publication of notice of surrender satisfies an agency's duty to make reasonable efforts to identify, locate, and provide notice to a nonsurrendering parent. To the contrary, the plain language of the statute requires the agency to make reasonable efforts to identify, locate, and provide notice of surrender to the nonsurrendering parent, and to file a written report identifying those efforts. Only then, if, despite those efforts, the identity of the non-surrendering parent remains unknown, does the statute provide for publication in a newspaper of general circulation.[9] Yet, respondent's report to the Kalamazoo court was devoid of any mention of any efforts taken to identify and locate petitioner, other than the publication itself. Despite being told that KGK was married, there is no evidence that respondent attempted to locate, for example, marriage records, or inquire any further into her husband's identity. Respondent filed an essentially blank, unsigned Voluntary Release For Adoption of Surrendered Newborn by Parent form with the court. Although respondent's petition to terminate petitioner's parental rights claimed that "reasonable efforts were made to identify and locate the father *and* publication was made in a newspaper of general circulation in the county where the newborn was surrendered and no one responded" (emphasis added), it appears that respondent undertook no efforts apart from the publication itself. Simply put, nothing in the language of MCL 712.7(f) can be read as providing that publication alone constitutes reasonable efforts, or that such a nondescript and *de minimis* notice as the one in this case, or one that was

_____

[9] The statute does not specify the contents of the notice of publication, or the duration of publication.

-12-

published for such a brief time, should be accepted by a trial court as adequately evidencing reasonable efforts.

In the context of termination of parental rights proceedings under the Juvenile Code, exactly how thorough and extensive efforts must be in order to be considered "reasonable" has not been defined; rather, reasonable efforts must be tailored to the particular facts of the case, and are to be evaluated on a case-by-case basis. See, e.g., *In re Hicks/Brown*, 500 Mich 79, 89-90; 893 NW2d 637 (2017). In this case, additional efforts on the part of respondent might have discovered the divorce/custody proceedings in the Ottawa court, and the existence of a restraining order prohibiting KGK from doing exactly what she did in surrendering Doe. Based on the record before us, respondent's efforts in this case appear to us to have fallen woefully short of what is "reasonable."

We vacate the Kalamazoo court's denial of petitioner's motion to unseal the adoption records. We reverse the court's determination that petitioner's parental rights as a nonsurrendering parent should be terminated, and vacate the order terminating those rights. We remand for further proceedings consistent with this opinion. We do not retain jurisdiction.


/s/ Mark T. Boonstra
/s/ Jane M. Beckering