*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* DPP, Minor.

---

EMMA HUNTLEY, Guardian of DPP, a minor,

        Petitioner-Appellee,

v

GARETH MATTHEW TERENCE PEOPLES,

        Respondent-Appellant.

UNPUBLISHED
February 25, 2026
10:56 AM

No. 376234
Washtenaw Probate Court
LC No. 24-001309-GM

---

Before: GADOLA, C.J., and BOONSTRA and PATEL, JJ.

PER CURIAM.

In this guardianship proceeding, respondent-father appeals as of right the appointment of petitioner as guardian of the minor child, DPP, under MCL 700.5204(2)(b) (parent permits the child to reside with another person and did not provide that person with legal authority for the child's care). Respondent-father argues that (1) the trial court violated his constitutional right to make decisions about the custody and care of his child by granting the petition for guardianship and (2) the trial court erred by finding that the requirements of MCL 700.5204(2)(b) were satisfied. We affirm.

## I. FACTS

DPP has dual citizenship in the United States and Northern Ireland. DPP lived in Northern Ireland with his parents until respondent-mother brought DPP and his six brothers and sisters to the United States in 2018. In August 2022, following divorce proceedings in the U.S., respondent-father was awarded temporary full custody of the minor children, and respondent-mother's parenting time was suspended. The order permitted the minor children to reside in Northern Ireland with respondent-father. Shortly thereafter, respondent-father attempted to move back to Northern Ireland with the children. Respondent-father went to pick up the three older children, EP, RP, and DPP, and fly back to Northern Ireland. The three children refused to go, and EP and RP allegedly beat up respondent-father and cracked his ribs. In October 2022, respondent-father again attempted to take his three older sons back to Northern Ireland, but they were "angry, very aggressive, [and] very disrespectful." Respondent-father testified that he "did what [he] had to

do" and returned to Northern Ireland with the other minor children, leaving DPP and his two older brothers in Michigan. Respondent-father provided a power of attorney to his former-brother-in-law and his wife, the Kosmalskis, for the children's care; however, the Komalskis allowed the children to stay with them for only two weeks.

Petitioner is the children's aunt by marriage; she was married to respondent-mother's brother. Petitioner testified that DPP came to live with her after respondent-father left the U.S. in October 2022, and later, his two older brothers came to live with her as well. Petitioner received a power of attorney from respondent-father for the minor children's care in February 2023. Respondent-father testified that he signed the power of attorney for petitioner because the divorce court suggested it. Petitioner received a second power of attorney in July 2023, which expired in January 2024. In October 2024, after unsuccessfully seeking medical care for one of the children because the power of attorney had expired, petitioner contacted respondent-father to renew the power of attorney. Respondent-father conditioned the renewal of the power of attorney on petitioner arranging for the children to communicate with him more and having the children visit Northern Ireland. Petitioner responded that she had encouraged the boys to talk to and visit respondent-father for the past two years, but her efforts were largely unsuccessful. At that point, both parents had moved back to Northern Ireland, and petitioner could not make medical appointments for the children without a power of attorney. Petitioner was concerned the children needed medical care; thus, she filed a petition for guardianship.[1]

In November 2024, petitioner was granted a temporary guardianship of the children pending a hearing. In April 2025, respondent-father moved to terminate the guardianship, arguing that there were no statutory grounds for petitioner to be granted a guardianship. In June 2025, the trial court held an evidentiary hearing on the petition for guardianship, with respondent-father appearing remotely from Northern Ireland. Respondent-father testified that he did not dispute petitioner's ability to provide care to the boys, but he did not consent to petitioner being appointed as guardian and was "actually uncomfortable with [petitioner] having the children." Respondent-father stated that petitioner was encouraging the boys to disregard the court order granting him full custody. Petitioner testified that respondent-father left the boys in a parking lot and had not checked to make sure they had been picked up by an adult until weeks later. In the over two and a half years that the boys lived with petitioner, respondent-father had not attempted to take the boys back to Northern Ireland, had not sent the boys' passports to even make it possible to leave the country, or even visited the boys once in Michigan. When respondent-father left, the boys were 12, 15, and 16 years old. At the time of the hearing, EP was 19, RP was almost 18, and DPP was 15 and a half. Petitioner testified that she could not set up medical appointments for the children or enroll them in school without a power of attorney or guardianship, and the children had medical needs that required a doctor's attention.

The guardian ad litem (GAL) testified that DPP expressed a strong preference to remain living with petitioner. DPP said he is very comfortable living with petitioner and is thriving in school. The GAL set up a phone call between DPP and respondent-father a couple weeks before

---

[1] By the time petitioner filed for guardianship, EP had turned 18 years old, so petitioner was granted temporary guardianship of RP and DPP.

the hearing that went extremely well. Also, the GAL testified that respondent-father recently informed him that he lost the kids' passports, and that is the reason he had not sent them. The GAL testified he believed the court should grant the petition for guardianship because it was necessary for DPP's stability under the circumstances. Respondent-father's attorney argued there was no legal basis for the trial court to grant the guardianship under MCL 700.5204(2)(b) because respondent-father did not "permit" the children to live with petitioner.

At the conclusion of the hearing, the trial court granted the petition for guardianship and appointed petitioner as guardian of RP and DPP.[2] The trial court found that the word "permit" as used in the guardianship statute, was broad enough to include instances when a parent leaves a minor to reside with another person, as is what occurred here. The trial court found that petitioner was not trying to hinder the relationship between respondent-father and the children, but the children were old enough to communicate with respondent-father on their own. Respondent-father now appeals.

## II. ANALYSIS

Respondent-father argues that the trial court violated his constitutional rights by granting a guardianship under MCL 700.5204(2)(b) because his parental rights had not been terminated, he had sole legal custody to his children, and he objected to petitioner having guardianship of his child. We disagree.

"We review de novo questions of law involving statutory interpretation and questions concerning the constitutionality of a statute." *In re Guardianship of Versalle*, 334 Mich App 173, 176; 963 NW2d 701 (2020). The United States Supreme Court and our Supreme Court have recognized that parents have a fundamental right and liberty interest in the care, custody, and control of their children. *Troxel v Grandville*, 530 US 57, 68-69; 120 S Ct 2054; 147 L Ed 2d 49 (2000); *In re Sanders*, 495 Mich 394, 409; 852 NW2d 524 (2014). However, "[a] parent's right to control the custody and care of [his or] her children is not absolute, as the state has a legitimate interest in protecting the moral, emotional, mental, and physical welfare of the minor . . . ." *Sanders*, 495 Mich at 409-410 (quotation marks and citation omitted). Although we have primarily considered the impacts on parental rights in child custody and protective proceedings, "a parent's constitutional right to raise his or her child is also applicable in the guardianship context." *Guardianship of Versalle*, 334 Mich App at 179.

MCL 700.5204(1) permits "[a] person interested in the welfare of a minor" to "petition for the appointment of a guardian for the minor." MCL 700.5204(2)(b) allows for appointment of a guardian if "the parent or parents permit the minor to reside with another person and do not provide the other person with legal authority for the minor's care and maintenance, and the minor is not residing with his or her parent or parents when the petition is filed." MCL 700.5204(2)(b) does not interfere with the fundamental right to raise children because specific circumstances must exist before the probate court may grant a guardianship. *Guardianship of Versalle*, 334 Mich App

---

[2] Since the guardianship was granted, RP turned 18 years old. Thus, DPP is the only subject of this appeal. DPP is now 16 years old.

at 184. Although there is a presumption in favor of a fit parent in guardianship proceedings, this presumption is rebutted by establishing the requirements of MCL 700.5204(2)(b). *Id*. at 182.

The trial court did not violate respondent-father's constitutional right to direct the custody and care of his child by appointing a guardian under MCL 700.5204(2)(b). Respondent-father's argument that the probate court interfered with decisions within his parental rights, such as the decision to appoint a guardian under MCL 700.5202 or delegate his authority under MCL 700.5201, is similarly without merit. As explained below, the trial court properly found the elements of MCL 700.5204(2)(b) were met, and thus his constitutional rights were not infringed.

Respondent-father also argues that the statutory requirements of MCL 700.5204(2)(b) were not met. Respondent-father argues that he did not "permit" DPP to reside with petitioner because he did not affirmatively consent and DPP was living in the United States against respondent-father's will and the custody order. Further, respondent-father argues that he provided for DPP's care by offering to sign a power of attorney with reasonable conditions. We disagree.

"This Court reviews for an abuse of discretion the probate court's dispositional rulings concerning guardianship. The court abuses its discretion when its decision falls outside the range of reasonable outcomes." *In re Guardianship of Bazakis*, 342 Mich App 144, 161; 992 NW2d 673 (2022), vacated in part on other grounds 513 Mich 1006 (2024). We review the probate court's findings of fact for clear error. *In re Redd Guardianship*, 321 Mich App 398, 403; 909 NW2d 289 (2017). A factual finding is clearly erroneous when we are "left with a definite and firm conviction that a mistake has been made." *Id*.

MCL 700.5204(2)(b) sets forth circumstances in which a guardian may be appointed and provides in relevant part:

> (2) The court may appoint a guardian for a minor if any of the following circumstances exist.
>
> * * *
>
> (b) The parent or parents permit the minor to reside with another person and do not provide the other person with legal authority for the minor's care and maintenance, and the minor is not residing with his or her parent or parents when the petition is filed.

This case requires interpretation of what it means for a parent to "*permit* the minor to reside with another person." MCL 700.5204(2)(b) (emphasis added). "The primary goal of statutory interpretation is to effectuate the Legislature's intent." *In re Miller*, 322 Mich App 497, 501; 912 NW2d 872 (2018). If the language of the statute is clear and unambiguous, this Court applies the statute as written. *Id*.

With regard to the first requirement, the plain language of the statute uses "permit" in the present tense; therefore, the permission must be currently occurring at the time when the petition is filed. *Deschaine v St Germain*, 256 Mich App 665, 670; 671 NW2d 79 (2003). Moreover, "reside" incorporates the legal meaning of residence: "a place of abode accompanied with the

-4-

intention to remain." *Guardianship of Versalle*, 334 Mich App at 181. "There must also be no grant of legal authority for a child's care and maintenance[.]" *Id.*

Merriam Webster's Dictionary defines the transitive verb "permit" as "1. to consent to expressly or formally. 2. to give leave: authorize. 3. to make possible: to give an opportunity: allow." *Merriam Webster's Collegiate Dictionary* (12th ed). As these definitions demonstrate, the meaning of "permit" is quite broad and can mean either affirmative acts showing authorization, such as consent or express agreement, or refer to more passive connotations, such as to merely make possible or allow.

We may presume that when drafting MCL 700.5204(2)(b), the Legislature purposefully chose the word "permit," rather than "consent." This word choice suggests that the Legislature intended for "permit" to have a meaning different from consent, encompassing its broader meaning and more passive connotations. Looking at the context, the Legislature chose a word that would allow for the statute to be applied in a broader set of circumstances to ensure that children would not be left without proper legal authority and care.

The trial court heard testimony that, when respondent-father was awarded custody of his minor children and attempted to move with them back to Northern Ireland, DPP and his two older brothers refused. Respondent-father made the decision to leave the country with his younger children and allowed DPP and his brothers to live with relatives in the United States. Accordingly, DPP had lived in the United States without his father since August 2022. Although respondent-father testified that the arrangement was intended to be temporary and that he wanted his sons to live with him in Northern Ireland, he made no attempts to regain physical custody of his children in the two years between August 2022 and petitioner's filing of the petition for guardianship in November 2024. Respondent-father was uncomfortable with his children living with petitioner, but he took no actions to prevent it. On multiple occasions, respondent-father provided petitioner with power of attorney for the children's care. However, respondent-father did not regularly renew the power of attorney and allowed it to expire, leaving no person with legal authority to care for DPP. When the petition for guardianship was filed, respondent-father had recently declined to renew the power of attorney unless petitioner made assurances to encourage communication between respondent-father and his son and arrange for DPP to visit his parents in Northern Ireland. Petitioner testified that putting those conditions in the power of attorney confused medical providers and made them think they had to contact respondent-father to consent to medical care. If petitioner were the children's legal guardian, she could put them on her health insurance plan. The trial court credited petitioner's testimony and agreed that the fact the children could not presently receive medical care was an important consideration. The trial court found that the statute was intended to apply to children who were left with an adult who had no legal authority to care for them.

Under these circumstances, the trial court did not err by finding that the statutory requirements for a guardianship under MCL 700.5204(2)(b) were met because respondent-father permitted DPP to reside with petitioner within the meaning of the statute and had not provided legal authority for his care. The plain meaning of the word "permit" encompasses the circumstance here in which respondent-father acquiesced or allowed his child to live with petitioner while he lived in another country, and did not provide legal authority for the child's care at the time when

the petition was filed. Accordingly, the first requirement of MCL 700.5204(2)(b), that the parent permits the child to reside with another person, was met.

With regard to the remaining requirements, at the time when the petition was filed, petitioner did not have legal authority to care for DPP. We look to the circumstances at the time when the petition was filed, and find that the previous power of attorney had expired nearly a year before. The fact is that neither petitioner nor any other relative had power to care for DPP at the time when the petition was filed. Therefore, the second requirement was also satisfied.

Finally, DPP was not living with respondent-father at the time the petition was filed. Despite respondent-father's desire to reunify his family, DPP had not been to Northern Ireland in two years and had resided with petitioner since August 2022. Accordingly, the third and final requirement under MCL 700.5204(2)(b) was met. The trial court did not abuse its discretion in granting the petition for guardianship.

Affirmed.

/s/ Michael F. Gadola
/s/ Mark T. Boonstra
/s/ Sima G. Patel