*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* SCHALL, Minors.

UNPUBLISHED
June 16, 2022

No. 358685
Monroe Circuit Court
Family Division
LC No. 19-024847-NA

Before: LETICA, P.J., and K. F. KELLY and RIORDAN, JJ.

PER CURIAM.

Respondent-mother appeals by right the trial court's order terminating her parental rights to the minor children, CS and GS. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Respondent is the mother to five children, including CS and GS, the minors at issue in this case. CS was born in 2019, and he tested positive for opiates but did not require withdrawal treatment. Respondent gave birth to GS in 2020. On August 16, 2019, after CS's birth, petitioner filed a petition to exercise in-home jurisdiction under to MCL 712A.2(b). The father of CS, who is not a party to this appeal, was not initially included in the petition. He was, however, subsequently added in an amended petition for failing to comply with the investigation by Children's Protective Services and for failing to protect CS from respondent.

Approximately one year later, on June 19, 2020, Michigan State Police were called to investigate an incident involving domestic violence between respondent and the father. Respondent had allegedly struck the father in the nose while they were in the car, causing the father to need to seek medical treatment. The next day, on June 20, 2019, respondent and the father got into another argument at their home. Respondent was later found unconscious on the floor as the result of an apparent overdose of narcotics. Although respondent later denied it, she allegedly told a child-welfare specialist that the overdose was a suicide attempt. After these incidents, the trial court ordered respondent to move out of the marital home and ordered that respondent's parenting time with CS was to be supervised.

-1-

During a preliminary hearing[1] in October 2020, shortly after GS's birth, respondent and the father got into another argument, apparently related to the father's failure to contest removal of the children. The argument culminated in respondent being removed from the hearing, followed by an alleged attempt by respondent to run over the father with her vehicle. A few months later, in January 2021, respondent and the father got into yet another argument while driving. After the father pulled the car over, respondent began hitting the father with a sharp object that caused multiple lacerations to the father's shoulder, leg, and back of his neck.

On February 21, 2021, an adjudication trial was held in which the trial court found that it had jurisdiction over the minor children. The court then held a two-day bench trial on whether to terminate respondent's parental rights. Although the petition cited statutory grounds MCL 712A.19b(3)(g) (failure to provide care or custody), MCL 712A.19b(3)(i) (parental rights to another child were previously terminated due to serious and chronic neglect, and those conditions have not been rectified), and MCL 712A.19b(3)(j) (likelihood of harm), the trial court only found that grounds (g) and (j) supported termination. The court also found that it was in the best interests of the children to terminate respondent's parental rights. This appeal followed.

## II. STANDARDS OF REVIEW

This Court reviews for clear error the trial court's decision that grounds for termination of parental rights has been proved by clear and convincing evidence. *In re Pops*, 315 Mich App 590, 593; 890 NW2d 902 (2016). This Court also reviews the trial court's determination that termination of parental rights is in the best interest of a child for clear error. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004). "This Court gives deference to a trial court's special opportunity to judge the weight of the evidence and the credibility of the witnesses who appear before it." *In re TK*, 306 Mich App 698, 710; 859 NW2d 208 (2014).

## III. ANALYSIS

### A. STATUTORY GROUNDS

Respondent first argues that the trial court clearly erred by finding that statutory grounds for termination under MCL 712A.19b(3) had been proven by clear and convincing evidence. We disagree.

The trial court terminated respondent's parental rights under MCL 712A.19b(3)(g) and (j), which permit termination under the following circumstances:

> (g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable

---

[1] As a result of the COVID-19 pandemic, this hearing was conducted virtually.

expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

Regarding § 19b(3)(g), the trial court stated:

Respondent . . . is unable to provide proper care and custody of [both children] within a reasonable time because, in viewing the evidence and the history of the case along with services provided and partially engaged in pre- and post-adjudication she has a history of substance abuse, domestic violence and serious emotional/psychological instability that has improved very little in the lengthy period of time this case has been opened. The Respondent mother has a lengthy criminal record including crimes going to her credibility. She has engaged in criminal acts, most significantly domestic violence and assaults, which she and her husband have lied about and covered up. She has an extremely limited track record of managing her psychological instability. That instability and assaultiveness creates a substantial risk of harm to the children.

The trial court did not clearly err. Under MCL 712A.19b(3)(g), "[a] parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App at 710. The evidence demonstrated that respondent made little to no progress in addressing her proclivity for domestic violence. She refused to admit that she has a problem with domestic violence, let alone admit that she committed such an act.[2] Therefore, with respondent not being truthful and forthright with her mental-health treatment providers with respect to domestic violence, there was no evidence with which the trial court could conclude respondent was making progress with her domestic violence issues. Considering respondent's lack of progress with respect to her issues with domestic violence, the trial court did not clearly err by finding that clear and convincing evidence supported termination under § 19b(3)(g). See *In re Trejo*, 462 Mich 341, 363; 612 NW2d 407 (2000) (holding that the trial court did not clearly err "by finding that the evidence of respondent's slow progress in counseling established the alleged ground for termination under subsection 19b (3)(g).").

The same rationale applies to the trial court's other ground for termination under MCL 712A.19b(3)(j). Because respondent was not making progress with regard to domestic violence, it was not clear error to conclude there is a reasonable likelihood that such violence will arise

---

[2] The trial court specifically found that respondent had engaged in numerous instances of domestic violence against her husband and that both respondent and her husband were being untruthful when they stated otherwise. This finding is not challenged on appeal and, in any event, issues of credibility are for the trier of fact to resolve, and this Court will not disturb those determinations. See *In re TK*, 306 Mich App at 710.

-3-

again. And although there was no evidence that either child had been a direct target of respondent's violence, the lack of physical harm is not dispositive of the issue. The type of harm contemplated by MCL 712A.19b(3)(j) includes both *physical* harm and *emotional* harm. *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011). That both physical and emotional harm are relevant to the analysis is consistent with the Legislature's decision to create a jurisdictional basis where the threat that a parent's actions would pose a risk to a child's mental well-being. See MCL 712A.2(b)(1); see also *In re Miller*, 322 Mich App 497, 501; 912 NW2d 872 (2018) ("This Court reads the statute as a whole and generally reads statutes covering the same subject matter together."). In other words, it would be nonsensical for the Legislature to permit a trial court to take jurisdiction over children on the basis of a threat to their mental well-being if the trial court were not permitted to terminate a parent's rights over the children for the same reason. See *In re AJR*, 300 Mich App 597, 600; 834 NW2d 904 (2013), aff'd 496 Mich 346 (2014) (we "presume[s] that every word of a statute has some meaning and must avoid any interpretation that would render any part of a statute surplusage or nugatory. As far as possible, effect should be given to every sentence, phrase, clause, and word.") (quotation marks and citation omitted).

The trial court heard testimony that children can be emotionally harmed if they view one parent commit violence against another parent. Indeed, there was evidence that CS had witnessed at least one of respondent's assaults on the father. The trial court, therefore, did not clearly err by finding that the there was a reasonable likelihood that the children would be harmed if returned to respondent's home.

## B. BEST INTERESTS

Respondent also argues that the trial court erred by finding that termination of her parental rights was in the children's best interests. We disagree.

Once a trial court concludes that a statutory ground for termination has been established by clear and convincing evidence, it must terminate a parent's parental rights if it finds that termination is in the child's best interests. *In re White*, 303 Mich at 713. All available evidence should be weighed by the trial court, which should consider factors such as " 'the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home.' " *Id.*, quoting *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 114 (2012). A trial court also can consider a parent's history of domestic violence, the parent's compliance with her case service plan, the parent's visitation history with the child, the child's well-being while in her care, and the possibility of adoption. *In re White*, 303 Mich App at 714. "[T]he preponderance of the evidence standard applies to the best-interest determination." *In re Moss*, 301 Mich App 76, 83; 836 NW2d 182 (2013).

Respondent claims that the trial court's reasoning in its best-interest analysis is "illogical" because the evidence clearly showed that there is a bond between her and the children. The trial court recognized the existence of this bond and determined that this factor weighed *against* termination. But the court also correctly noted that it was required to consider a wide variety of factors when determining whether termination is in a child's best interest. See *In re White*, 303 Mich App at 713 ("[T]he court should consider a wide variety of factors . . . ."). Indeed, the trial court found that nearly all of the other factors it considered weighed in favor of termination. In

total, the court addressed 11 different factors and found that only one—the child's bond with the parent—weighed against termination. On the other hand, the trial court found that eight factors weighed in favor of termination, and two factors did not apply.

The dominant theme in the trial court's findings was that respondent's mental-health issues prevented her from being able to provide a safe and secure home for the children. The evidence demonstrated that respondent has not addressed or recognized her mental-health issues with respect to domestic violence. Therefore, we do not have a definite and firm conviction that the trial court made a mistake when it found that termination of respondent's parental rights was in the best interests of each child. As the trial court recognized, respondent's issues with domestic violence, and her unwillingness or inability to confront those issues, permeates respondent's ability to parent and provide a proper environment for the children.

Respondent also argues that the court erroneously cited the reunification plan with the children's father as a reason to terminate respondent's parental rights. While addressing the "Relative Care" factor, the court stated:

> While [CS] and [GS] are not in relative care presently, the goal is reunification with Respondent Father who this court believes has the ability and wherewithal to provide for the children . . . . While relative care normally obviates against termination of parental rights, in the case at bar, and considering the two year history of this case and deterioration by Respondent Mother, this factor weighs in favor of termination of her parental rights when taken in the totality of other factors.

The Michigan Supreme Court has held that "a child's placement with relatives weighs against termination." *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010). Therefore, "the fact that a child is living with relatives when the case proceeds to termination is a factor to be considered in determining whether termination is in the child's best interests." *In re Olive/Metts*, 297 Mich App at 43. Indeed, "[a] trial court's failure to explicitly address whether termination is appropriate in light of the children's placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal." *Id*.

Although the children were *not* in relative placement and not placed with the father at the time of termination, the court considered their anticipated placement with him because the plan continued to be reunification with him. There was no need for the court to speculate whether the children would be returned to the father in the future. Although reunification with the father was the goal, such a result was not guaranteed. Nevertheless, to the extent the trial court erred, any such error was harmless. See *In re Perry*, 193 Mich App 648, 650-651; 484 NW2d 768 (1992) (trial court's erroneous consideration of respondent's incarceration status was harmless because termination was appropriate under other statutory factor).

Respondent contends that the trial court's holding that placement with the father, a "relative," should have weighed *against* termination. See *In re Mason*, 486 Mich at 164. However, a child's biological father is not a "relative," as that term is defined by MCL

712A.13a(1)(j).[3] See *In re Schadler*, 315 Mich App 406, 413; 890 NW2d 676 (2016) (holding that a child's biological mother is not a "relative" for purposes of MCL 712A.19b). Therefore, because the father is not a "relative" under the statute, there is no relative placement. Accordingly, the court did not clearly err when it failed to find that this factor weighed against termination.

Affirmed.

/s/ Anica Letica
/s/ Kirsten Frank Kelly
/s/ Michael J. Riordan

---

[3] MCL 712A.13a(1)(j) states, in pertinent part:

"Relative" means an individual who is at least 18 years of age and related to the child by blood, marriage, or adoption, as grandparent, great-grandparent, great-great-grandparent, aunt or uncle, great-aunt or great-uncle, great-great-aunt or great-great-uncle, sibling, stepsibling, nephew or niece, first cousin or first cousin once removed, and the spouse of any of the above, even after the marriage has ended by death or divorce.